Thomas Zeilman, WSBA# 28470
tzeilman@qwestoffice.net
LAW OFFICES OF THOMAS ZEILMAN
32 N. Third St., Suite 310
P.O. Box 34
Yakima, WA  98907
Telephone:  (509) 575-1500

David F. Askman, CO Bar # 44423
dave@askmanlaw.com
THE ASKMAN LAW FIRM LLC
2533 32nd Ave.
Denver, CO  80211
Telephone:  (720) 855-1533

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| **CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION,**<br><br>Plaintiff,<br><br>vs.<br><br>**AIR LIQUIDE AMERICA CORP.,** a Delaware corporation; **ARKEMA INC.,** a Pennsylvania corporation; **BAYER CROPSCIENCE L.P.,** a Delaware limited partnership; **BP WEST COAST PRODUCTS LLC,** a Delaware limited liability company; **BURLINGTON NORTHERN AND SANTA FE RAILWAY,** a Delaware corporation; **CALBAG METALS CO.,** an Oregon corporation; **CITY OF PORTLAND,** an Oregon municipal corporation; **EASTMAN CHEMICAL CO.,** a Delaware corporation; **EVRAZ, INC. NA,** a Delaware corporation; **EXXONMOBIL CORP.,** a New York corporation**; FMC CORP.,** a Delaware corporation; **GA-TEK, INC./GOULD ELECTRONICS, INC.,** a Delaware corporation; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No.<br><br>**COMPLAINT FOR RECOVERY OF COSTS UNDER CERCLA § 107** |

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 1

**GUNDERSON LLC,** an Oregon limited liability company; **KINDER MORGAN BULK TERMINALS, INC.,** a Louisiana corporation; **KINDER MORGAN GP, INC.,** a Delaware corporation; **KOPPERS INDUSTRIES, INC.,** a Pennsylvania corporation; **MCCALL OIL REAL ESTATE CO. LLC,** a Washington corporation; **MMGL CORP.,** a Washington corporation; **MOREC FRONT LLC,** an Oregon limited liability company; **NORTHWEST NATURAL GAS,** an Oregon corporation; **NORTHWEST PIPE CO.,** an Oregon corporation; **NUSTAR ENERGY L.P.,** a Delaware limited partnership; **PORT OF PORTLAND,** an Oregon port district; **SCHNITZER STEEL INDUSTRIES, INC.,** an Oregon corporation; **SILTRONIC CORP.,** a Delaware corporation; **STATE OF OREGON; SULZER PUMP SERVICES (US) INC.,** a Delaware corporation; **TOC HOLDINGS CO.,** a Washington corporation; **UNION PACIFIC RAILROAD CO.,** a Delaware corporation; **UNITED STATES OF AMERICA**,

                   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Plaintiff Confederated Tribes and Bands of the Yakama Nation alleges as follows:

## NATURE OF THE ACTION

1.　　This is a civil action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover from the defendants the costs of response to defendants' releases of hazardous substances at and from Portland Harbor, which is located on the Lower Willamette River in the State of Oregon ("the Site"); and a declaratory judgment of liability for future costs of response and the reasonable costs of assessing damages for the injury, destruction and loss of natural resources resulting from such releases at and from the Site into the Multnomah Channel and Lower Columbia River.

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 2

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction over this claim is conferred by 42 U.S.C. §§ 9607 and 9613(b), and 28 U.S.C. §§ 1331.  On November 1, 2016, plaintiff gave notice to defendants of its intent to sue under 42 U.S.C. § 9613(g)(1). A copy of the notice is attached hereto as Exhibit 1 and is incorporated by reference.

3.      Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and the threatened and actual release of hazardous substances occurred, within the District of Oregon.

## PARTIES

4.      Plaintiff Confederated Tribes and Bands of the Yakama Nation ("Yakama Nation" or "tribe") is a federally recognized Indian tribe and the legal successor in interest to the Indian signatories to the Treaty with the Yakamas of June 9, 1855 (12 Stat. 951) ("Treaty"). The nature and scope of the Yakama Nation's off-reservation treaty reserved fishing rights on the Columbia River and its tributaries has been extensively litigated through participation as an original plaintiff-intervener in the continuing jurisdiction case of *United States v. Oregon* (Civil No. 68-513-KI, D. Or.).

5.      The Yakama Nation participates in numerous activities relating to the protection and restoration of anadromous fish stocks and other aquatic resources passing through its treaty-reserved "usual and accustomed fishing places" on the Columbia River and its tributaries, including the Lower Willamette River and Multnomah Channel. These activities include fish habitat restoration efforts, many of which are detailed in the *Columbia Basin Fish Accords*; participation in the ongoing processes for the development of Recovery Plans for listed salmon and steelhead under the Endangered Species Act; development and implementation of fishing

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 3

management plans as a party to *U.S. v. Oregon*; implementation of the Pacific Salmon Treaty through participation in the Pacific Salmon Commission processes (*see* 16 U.S.C. 3631, *et. seq.*); and participation in a variety of other policy and technical committees and organizations dealing with issues related to the protection and rebuilding of salmon, steelhead, lamprey, and other species throughout the Columbia River basin.

6.      Plaintiff Yakama Nation is an "Indian tribe" within the meaning of Section 107(a) and (f) of CERCLA, 42 U.S.C. § 9607(a) and (f).

7.      Defendant Air Liquide America Corp. is a Delaware corporation doing business in the State of Oregon, and owns and/or operates a facility at 6529 NW Front Ave. in Portland, Oregon.

8.      Defendant Arkema, Inc. is a Pennsylvania corporation doing business in the State of Oregon, and owns and/or operates a facility at 6400 NW Front Ave. in Portland, Oregon.

9.      Defendant Bayer Cropscience L.P. is a Delaware limited partnership doing business in the State of Oregon, and owns and/or operates facilities at 6193 and 6200 NW St. Helens Road in Portland, Oregon. The facility was formerly owned by Rhone-Poulenc, a wholly owned subsidiary of Bayer Cropscience L.P.

10.      Defendant BP West Coast Products LLC is a Delaware limited liability company doing business in the State of Oregon, and owns a facility at 9930 NW St. Helens Road in Portland, Oregon. The facility is operated by Atlantic Richfield Co., a wholly owned subsidiary of BP West Coast Products LLC.

11.      Defendant Burlington Northern Santa Fe Railway is a Delaware corporation doing business in the State of Oregon, and owns and/or operates facilities at various locations in Portland, Oregon, including at 4150 NW Yeon Ave. and 4155 NW Yeon Ave.

12.      Defendant Calbag Metals Co. is an Oregon corporation and owns and/or operate facilities at various locations in Portland, Oregon, including at 2495 NW Nicolai St., 4927 NW Front Ave., and 12055 N. Burgard Way.

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 4

13.     Defendant City of Portland is a municipal corporation of the State of Oregon and owns and/or operates facilities at various locations in Portland, Oregon.

14.     Defendant Eastman Chemical Co. is a Delaware corporation doing business in the State of Oregon, and owns and/or operates a facility at 4155 NW Yeon Ave. in Portland, Oregon.

15.     Defendant Evraz, Inc. NA is a Delaware corporation doing business in the State of Oregon, and owns a facility at 14400 N. Rivergate Blvd. in Portland, Oregon. The facility is operated by Oregon Steel Mills, Inc., a wholly owned subsidiary of Evraz, Inc. NA.

16.     Defendant ExxonMobil Corp. is a New York corporation doing business in the State of Oregon, and owns and/or operates a facility at 9420 NW St. Helens Road in Portland, Oregon.

17.     Defendant FMC Corp. is a Delaware corporation doing business in the State of Oregon. FMC Corp. formerly owned Gunderson Brothers Engineering Corp., which owned and/or operated a facility at 4350 NW Front Ave. in Portland, Oregon.

18.     Defendant GA-TEK, Inc./Gould Electronics, Inc. is an Ohio corporation doing business in the State of Oregon, and owns and/or operates a facility at 5909 NW 61st Ave. in Portland, Oregon.

19.     Defendant Gunderson LLC is an Oregon limited liability company and owns and/or operates a facility at 4350 NW Front Ave. in Portland, Oregon.

20.     Defendant Kinder Morgan Bulk Terminals, Inc. is a Louisiana corporation doing business in the State of Oregon, and owns and/or operates facilities at 11040 N. Lombard St. and 5880 NW St. Helens Road in Portland, Oregon.

21.     Defendant Kinder Morgan GP is a Delaware corporation doing business in the State of Oregon, and owns and/or operates facilities at various locations in Portland, Oregon, including at 11400 NW St. Helens Road.

22.     Defendant Koppers Industries, Inc. is a Pennsylvania corporation doing business in the State of Oregon, and owns and/or operates facilities at 7540 and 7900 NW St. Helens Road in Portland, Oregon.

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 5

23.     Defendant McCall Oil Real Estate Co. LLC is a Washington limited liability company doing business in the State of Oregon, and owns and/or operates facilities at 5480 and 5540-5724 NW Front Ave. in Portland, Oregon.

24.     Defendant MMGL Corp. is a Washington corporation doing business in the State of Oregon, and owns and/or operates a facility at 6529 NW Front Ave. in Portland, Oregon.

25.      Defendant Morec Front LLC is an Oregon limited liability company and owns and/or operates facilities at 5480 and 5540-5724 NW Front Ave. in Portland, Oregon.

26.     Defendant Northwest Natural Gas is an Oregon corporation and owns and/or operates a facility at 7900 NW St. Helens Road in Portland, Oregon.

27.     Defendant Northwest Pipe Co. is an Oregon corporation and owns and/or operates a facility at 12005 N. Burgard Way in Portland, Oregon.

28.     Defendant NuStar Energy L.P. is a Delaware limited partnership doing business in the State of Oregon, and owns and/or operates a facility at 9420 NW St. Helens Road in Portland, Oregon. The facility is operated by Shore Terminals LLC, a wholly owned subsidiary of NuStar Energy L.P.

29.     Defendant Port of Portland is an Oregon port district and owns and/or operates facilities at various locations in Portland, Oregon, including at 2100-2200 NW Front Ave. and 3556 NW Front Ave.

30.     Defendant Schnitzer Steel Industries, Inc. is an Oregon corporation and owns and/or operates facilities at 4350 and 6529 Front Ave. and 12005 N. Burgard Way in Portland, Oregon.

31.     Defendant Siltronic Corp. is a Delaware corporation doing business in the State of Oregon, and owns and/or operates a facility at 7200 NW Front Ave. in Portland, Oregon.

32.     Defendant State of Oregon is a sovereign state of the United States of America, and owns facilities below the Ordinary High Water line in the Lower Willamette River and Lower Columbia River in Oregon.

33.     Defendant Sulzer Pump Services (US) Inc. is a Delaware corporation doing business in the State of Oregon, and owns and/or operates a facility at 2800 NW Front Ave. in Portland, Oregon.

34.     Defendant TOC Holdings Co., formerly known as Time Oil Co., is a Washington corporation doing business in the State of Oregon, and owns and/or operates a facility at 10350 N. Time Oil Road in Portland, Oregon.

35.     Defendant Union Pacific Railroad Co. is a Delaware corporation doing business in the State of Oregon, and owns and/or operates a facility at 1135 N. Knott St. (Albina Rail Yard) in Portland, Oregon.

36.     Defendant United States of America owns and/or operates facilities in Portland, Oregon, including, but not limited to, facilities at 8010 NW St. Helens Road (U.S. Army Corps of Engineers) and 6767 N. Basin Ave. (U.S. Coast Guard).

37.     Each defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

38.     Each defendant owned and/or operated, and continues to own and/or operate one or more facilities on the Site, or was the owner and/or operator of a facility at the time of disposal of hazardous substances at the Site, and is thereby "liable" within the meaning of § 107(a) of CERCLA, 42 U.S.C. § 9607(a).

## STATUTORY FRAMEWORK

39.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in part:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . .

(4) . . . shall be liable for –

(A) all costs of removal or remedial action incurred by . . . an Indian tribe not inconsistent with the national contingency plan . . .

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 7

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such release.

40.     CERCLA Section 101(9) defines "facility" to include "(A) any building, structure, installation, equipment, pipe or pipeline, (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ."  42 U.S.C. § 9601(9).

41.     CERCLA Section 101(24) defines "remedial action" to include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event or a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. . . . ." 42 U.S.C. § 9601(24).

42.     CERCLA Section 101(16) defines "natural resources" to mean "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by. . . any Indian tribe." 42 U.S.C. § 9601(16).

43.     CERCLA Section 101(36) defines "Indian tribe" to mean "any Indian tribe, band, nation, or other organized group or community . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians."  42 U.S.C. § 9601(36).

## FACTUAL ALLEGATIONS

44.     The Lower Willamette River in and near Portland, Oregon, is and has been a "usual and accustomed fishing place" of the Yakama Nation under Article III of the Treaty since

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 8

time immemorial.  Yakama enrolled members exercise their reserved fishing rights therein and the Yakama Nation regulates such activity pursuant to its sovereign authority.

45.     The Portland Harbor section of the Lower Willamette River has been a major industrial area for many decades. Hazardous substances from facilities owned and/or operated by the defendants and/or their predecessors in interest entered the Lower Willamette River and Lower Columbia River from different activities, including, but not limited to, ship building and repair; ship dismantling; wood treatment and lumber milling; storage of bulk fuels; manufactured gas production; chemical manufacturing and storage; metal recycling, production and fabrication; steel mills, smelters, and foundries; and electrical production and distribution. Releases from these facilities occurred through storm water and waste water outfalls, spills from commercial operations occurring over the water, municipal combined sewer overflows, overland flow, bank erosion, groundwater migration, and other pathways.

46.     Hazardous substances released by the defendants at and from the Portland Harbor NPL Site include, but are not limited to: metals (including arsenic, antimony, arsenic, barium, cadmium, chromium, copper, lead, mercury, selenium, and zinc); petroleum hydrocarbons; polychlorinated biphenyls (PCBs); polycyclic aromatic hydrocarbons (PAHs); chlorinated pesticides and herbicides (DDD, DDT, DDE); chlorinated solvents; volatile organic compounds (VOCs); phthalates; dioxin/furans; chlorine; hydrochloric acid; ammonia; sodium hydroxide; calcium hydroxide; acetone; asbestos; sodium metabisulfite; sodium bichromate; sulfuric acid; monochlorobenzene; creosols; phenol; trichlorophenol; 2-nitrophenol; perchloroethylene; trichloroethene (TCE); methylene chloride; methyl ethyl ketone; sodium cyanide; ethylene glycol; tributyltin; and benzene, toluene, ethylbenzene, and xylene (BTEX).

47.     On December 1, 2000, the United States Environmental Protection Agency ("EPA") placed the Portland Harbor Site on the National Priorities List ("NPL") pursuant to CERCLA and the National Contingency Plan ("NCP").

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 9

48.     The Portland Harbor NPL Site is located in Portland, Oregon, and includes the waters, bed and banks of the Willamette River from River Mile ("RM") 1.9 to RM 11.8, and facilities owned and/or operated by the defendants both in the River and upland areas.

49.     Hazardous substances from facilities owned and operated by the defendants at the Portland Harbor NPL Site and the Lower Willamette River have come to be located in the Lower Columbia River.

50.     The Site, as well as areas outside the Site where hazardous substances from the Site have come to be located, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

51.     There were and are "releases" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), as well as the threat of continuing releases, of hazardous substances into the environment at and from the Site.

52.     On September 28, 2001, pursuant to Sections 104, 122(a) and 122(d)(3) of CERCLA (42 U.S.C. §§ 9604, 9722(a) and (d)(3)), EPA issued an Administrative Order on Consent, U.S. EPA Docket Number CERCLA-10-2001-0240 ("AOC"), requiring each of the defendants to complete a Remedial Investigation and Feasibility Study ("RI/FS") for selection of a remedial action for the Site.

53.     On September 16, 2001, EPA entered into a Memorandum of Understanding with the plaintiff and five other Indian tribes to ensure the tribes' participation in RI/FS activities at the Site through funding of their CERCLA response costs ("response costs").

54.     On June 16, 2003, EPA amended the AOC to require each of the defendants to ensure the Yakama Nation's participation in the RI/FS for the remedial action at the Site by funding the response costs incurred by the tribe.

55.     Sometime in 2003, the defendants entered into a Tribal Funding Agreement for the Site with five other Indian tribes ("Funding Agreement"). In the Funding Agreement, the defendants are referred to as "the Funding Parties" and the Indian tribes are referred to as the "Tribal Governments." The stated purpose of the Funding Agreement is to provide for "direct

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 10

payment by the Funding Parties to the Tribal Governments of costs not inconsistent with the NCP associated with the collaborative RI/FS under the AOC." The Funding Agreement was amended on November 4, 2004, to include the plaintiff as a "Tribal Government" to receive funding from the defendants for its response costs incurred in the RI/FS for the remedial action.

56.    The Funding Agreement states the following: "EPA has concluded that these costs of participation are required by the AOC, are response costs not inconsistent with the National Contingency Plan (NCP), and are recoverable under CERCLA."

57.    The plaintiff participated in the RI/FS process and has recovered its costs incurred thereby pursuant to the Funding Agreement.

58.    The plaintiff has incurred additional response costs related to determining the nature and extent of the defendants' releases of hazardous substances from the Portland Harbor NPL Site into the Multnomah Channel and Lower Columbia River.

59.    In September 2009, the Plaintiff completed a Natural Resource Injury Assessment Plan for the Site, including the Multnomah Channel and the Lower Columbia River.

60.    In February 2012, the Plaintiff completed an equivalent Preliminary Assessment for the Multnomah Channel and Lower Columbia River. This report determined that releases of hazardous substances from the Portland Harbor NPL Site into these adjacent waterways have occurred in quantities that are likely to have adversely affected and caused injury to natural resources for which the Plaintiff is a trustee under Section 107(f)(1) of CERCLA, 42 U.S.C. § 9607(f)(1).

61.    Plaintiff has incurred, and will continue to incur, reasonable costs necessary to assess the injury, loss or destruction of the natural resources for which it is trustee.

62.    On February 16, 2016, EPA issued it Final Remedial Investigation report for the Site pursuant to the NCP.

63.    On June 8, 2016, EPA issued its Final Feasibility Study and Proposed Plan for the Site pursuant to the NCP.

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 11

64.     On January 6, 2017, EPA issued a final Record of Decision selecting a remedial action for the Site pursuant to the NCP.

65.     The plaintiff has participated and continues to participate in the selection and implementation of the remedial action after completion of the RI/FS process and issuance of the Record of Decision, and has incurred response costs and will continue to incur response costs in doing so.

## FIRST CLAIM FOR RELIEF

### (Claim for Recovery of CERCLA Response Costs)

66.     The allegations in Paragraphs 1 through 65 are incorporated herein by reference.

67.     As a result of the releases or threatened releases of hazardous substances at the Portland Harbor Superfund Site, the plaintiff has incurred response costs as defined by Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a).

68.     The costs incurred by the plaintiff at the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

69.     As of September 30, 2016, the plaintiff had incurred $283,471.96 in unreimbursed response costs for the Portland Harbor NPL Site.

70.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the defendants are liable to the Yakama Nation for all costs that are not inconsistent with the NCP incurred by the Plaintiff in connection with CERCLA response actions at the Site.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment)

71.     The allegations in paragraphs 1 through 70 are incorporated herein by reference.

72.     A present and justiciable controversy has arisen and exists between the plaintiff and defendants relating to liability for past and future costs incurred by the plaintiff to respond to releases or threatened releases of hazardous substances to, at or from the Site.

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 12

73.     Pursuant to 42 U.S.C. § 9613(g)(2), the plaintiff seeks and is entitled to a declaratory judgment that defendants and each of them are liable parties under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for future response costs incurred by the plaintiff at the Site.

74.     Pursuant to Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), defendants are liable to plaintiff for reasonable costs of assessing the injury, loss or destruction of natural resources from releases at and from the Site to Multnomah Channel and the Lower Columbia River.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiff, the Confederated Tribes and Bands of the Yakama Nation, respectfully requests that the Court:

1.     Award the plaintiff a judgment against the defendants, for all unreimbursed response costs incurred by the Yakama Nation in connection with selection of a remedial action for the Portland Harbor NPL Site, including all costs incurred in this action, plus interest;

2.     Enter a declaratory judgment on the liability of the defendants for the Plaintiff's future response costs in connection with the remedial action at the Portland Harbor NPL Site that will be binding on any subsequent action or actions by plaintiff to recover further response costs;

3.     Enter a declaratory judgment on the liability of the defendants for the Plaintiff's costs incurred or to be incurred to assess the injury, loss or destruction of natural resources in the Multnomah Channel and Lower Columbia River resulting from the release of hazardous substances at and from the Portland Harbor NPL Site, and to assess the amount necessary for restoration, replacement and acquisition of equivalent resources; and

4.     Grant such other and further relief as this Court deems appropriate.

DATED this 30th day of January, 2017.

s/ Thomas Zeilman
THOMAS ZEILMAN    WSBA# 28470
LAW OFFICES OF THOMAS ZEILMAN
32 N. 3rd St., Suite 310
P.O. Box 34
Yakima, WA  98907
(509) 575-1500

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 13

s/ David Askman_____
DAVID F. ASKMAN    CO Bar #44423
THE ASKMAN LAW FIRM LLC
2533 West 32nd Avenue
Denver, CO  80211
(720) 855-1533

Attorneys for Plaintiff

COMPLAINT FOR RECOVERY OF COSTS
UNDER CERCLA § 107 - 14